**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| DANA DEWEESE BUNTAIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 21-cv-1078 |
| | ) | |
| v. | ) | |
| | ) | Honorable Colin S. Bruce |
| SHELITH HANSBRO, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTIONS *IN LIMINE***

NOW COME Defendants, James Brown, Shelith Hansbro, Angela Locke, and Jane

Moskus, by and through their attorney, Kwame Raoul, Attorney General for the State of Illinois,

and respectfully move to enter the following motions *in limine*. In support thereof, Defendants

state the following:

**I.      PLAINTIFF SHOULD BE BARRED FROM OFFERING TESTIMONY OR
OTHERWISE SUGGESTING THAT THE STATE OF ILLINOIS WILL
INDEMNIFY DEFENDANTS.**

Defendants are represented by the Illinois Attorney General, pursuant to the State

Employee Indemnification Act. 5 ILCS 350/2. Defendants may be indemnified by the State of

Illinois for any damages awarded and court costs and attorney fees assessed as part of any final

and unreversed judgment. 5 ILCS 350/2(d). Indemnification is not material to any of the issues

presented in this case and even the suggestion of indemnification to the jury would result in

substantial prejudice to Defendants.

The Seventh Circuit, as well as other federal circuits, has long held that evidence of

payments received from collateral sources is inadmissible on the issue of damages. See *Lawson

v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998) (citing *Larez v. Holcomb*, 16 F.3d 1513, 1518 (9th

Cir. 1994) (recognizing a long-standing rule that "evidence of insurance or other

indemnification is not admissible on the issue of damages, and, should any such information reach the ears of the jurors, the court should issue a curative instruction") and *Halladay v. Verschoor*, 381 F.2d 100, 112 (8th Cir. 1967) (recognizing an exception to the collateral payments rule exists when insurance or indemnification is a material issue in the case)). Likewise, Rule 411 prohibits showing a party is covered by insurance, because it is irrelevant to the issues of liability and damages. See Fed. R. Evid. 411. In general, courts exclude evidence of indemnification out of a fear that it will encourage a jury to inflate its damages award because it knows the government, not the individual defendants, is footing the bill. *Lawson*, 153 F.3d at 379.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request that this Court bar Plaintiff from suggesting, referencing, or eliciting any testimony regarding statutory indemnification by the State.

## II.    PLAINTIFF AND HER WITNESSES SHOULD BE BARRED FROM TESTIFYING AT TRIAL REGARDING THE CAUSATION OF ANY MEDICAL OR MENTAL HEALTH CONDITION.

Defendants anticipate that Plaintiff may testify or attempt to elicit inadmissible testimony as to the causation of any of her alleged medical or mental health condition. Specifically, Defendants anticipate that Plaintiff will testify that Defendants' actions/omissions caused her to suffer an injury and will testify to the alleged long-term effects of that injury. Plaintiff is not a physician and lacks medical training. Therefore, any uninformed opinions or lay accounts proffered by her regarding the causation of any medical conditions should be barred. See Fed. R. Evid. 701. Expert testimony is necessary to explain the complex nature of any relationship between alleged actions/omission of Defendants and the causation of any medical conditions. *Risner v. City of Crown Point*, No. 08-CV-100, 2010 U.S. Dist. LEXIS 100064, at *19 (N.D. Ind. Sept. 21, 2010) (ruling an individual may experience physical injuries that she can

testify to, but an individual is not qualified to state that a specific action was the proximate cause of her injuries).

Under Federal law, a non-expert is not permitted to give expert testimony. See Fed. R. Evid. 701. A person lacking any medical training is incompetent to testify to the causal relationship between an event and a subsequent medical condition. *Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001). Without medical knowledge, skill, experience, training, and/or education, Plaintiff is not equipped to render conclusions or opinions about the cause of any medical conditions. See Fed. R. Evid. 701; *Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558 (7th Cir. 2006). Defendants agree that Plaintiff can testify to her own experiences as a layperson, but she should not be able to testify regarding the specific medical diagnoses made by a medical professional, the methods used by a medical professional to diagnose her medical and mental health condition, or any long-term effects caused by Defendants' actions/omissions. It would also be inappropriate for Plaintiff to give her opinion as to his diagnosis or the proper treatment for her alleged medical and mental health condition. Additionally, any witness not disclosed under Federal Rule of Civil Procedure 26(a)(2) and/or any witness who has not been certified as an expert by this Court should similarly be precluded from giving any such testimony.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request that this Court bar Plaintiff from eliciting any testimony from any non-expert witness regarding the causation of any medical or mental health condition.

### III. PLAINTIFF SHOULD BE BARRED FROM OFFERING THE INADMISSIBLE HEARSAY STATEMENTS OF ANY MEDICAL OR MENTAL HEALTH PROFESSIONALS.

Plaintiff should be barred from offering testimony at trial as to the statements of any treating medical or mental health professional. While Plaintiff's out-of-court statements to

medical and mental health professionals for the purposes of treatment are admissible, the out-of-court statements made by a medical or mental health professional to the Plaintiff, not contained in admissible medical records, and offered by the Plaintiff are inadmissible hearsay. See Fed. R. Evid. 801, 802. No exception to the hearsay rules permits such statements to be used as evidence. See Fed. R. Evid. 803, 804.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request that this Court bar Plaintiff from suggesting, referencing, or eliciting any testimony regarding statements made by out-of-court medical or mental health professionals.

**IV.     PLAINTIFF SHOULD BE BARRED FROM OFFERING INADMISSIBLE HEARSAY STATEMENTS OF OTHER INMATES, STAFF, AND/OR WITNESSES.**

Plaintiff should be barred from offering testimony at trial as to the statements of any other inmates, staff, or witnesses. The out-of-court statements made by other inmates, staff, and/or witnesses and offered by the Plaintiff are inadmissible hearsay. See Fed. R. Evid. 801, 802. No exception to the hearsay rules permits such statements to be used as evidence. See Fed. R. Evid. 803, 804.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request that this Court bar Plaintiff from suggesting, referencing, or eliciting any testimony regarding statements made by other inmates, staff, and/or witnesses.

**V.     PLAINTIFF AND HER WITNESSES SHOULD BE BARRED FROM TESTIFYING AT TRIAL REGARDING WHETHER DEFENDANTS FOLLOWED ILLINOIS DEPARTMENT OF CORRECTIONS POLICIES AND PROCEDURES.**

Defendants anticipate that Plaintiff may testify or attempt to elicit testimony regarding policies and procedures of the Illinois Department of Corrections ("IDOC") and whether Defendants followed those policies and procedures. Violation of a policy does not make it more

or less likely Defendants' conduct violated Plaintiff's constitutional rights. See, *e.g., Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (any deviation from internal policies "is completely immaterial as to the question of whether a violation of the federal constitutional has been established"). The trial court in *Thompson* granted the defendants' pretrial motion *in limine* to exclude the Chicago Police Department's General Orders concerning the appropriate use of force, concluding they were irrelevant and substantially more prejudicial than probative. *Id.* at 453. The Seventh Circuit affirmed the exclusion of this evidence as irrelevant to whether the officers used reasonable force, stating, "the violation of police regulations or even state law is completely immaterial to the question of whether a violation of the federal constitution has been established." *Id.* at 454. See also *Whren v. United States*, 517 U.S. 806, 815 (1996) (holding police manuals, guidelines, or general orders are not reliable gauges of what is reasonable under the Constitution); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (recognizing § 1983 protects plaintiffs from constitutional violations, not violations of state laws, departmental regulations, or police practices). "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations." *Thompson*, 472 F.3d at 454 (internal citations omitted). Courts have held that a violation of a policy, custom, or practice is not relevant to a claim filed pursuant to Section 1983. See *Bradley v. Jeffreys*, No. 19-cv-259, 2020 U.S. Dist. LEXIS 125312, at *11 (S.D. Ill. Jul. 16, 2020) (citing *Thompson*, 472 F.3d at 454) (noting that deviation from internal policy "is completely immaterial as to the question of whether a violation of the federal constitution has been established.")); *Watford v. Pfister*, 811 Fed. Appx. 374, 376 (7th Cir. 2020).

If the jury were presented with policies and protocols that may govern Defendants' conduct, the jury is likely to decide the case based on whether Defendants fulfilled their employment obligations. However, that is not the correct standard. The issue in this case is not

whether Defendants violated their employment obligations. The issue is whether Defendants violated Plaintiff's constitutional rights. The only relevant standard for Defendants' conduct is the constitutional standard set forth in the relevant case law. Introduction of administrative directives will mislead the jury as to the applicable legal standard and create confusion as to whether the Defendants' conduct should be judged against their employer's standard or the legal standards set forth in the jury instructions.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request that this Court bar Plaintiff from eliciting any testimony from any non-expert witness regarding whether the Defendants followed IDOC policies and procedures.

## VI. PLAINTIFF AND HER WITNESSES SHOULD BE BARRED FROM TESTIFYING AT TRIAL REGARDING WHETHER DEFENDANTS FOLLOWED THE PREA NATIONAL STANDARDS.

Defendants anticipate that Plaintiff may testify or attempt to elicit testimony regarding the policies and procedures described in the PREA National Standards issued by the United States Department of Justice and whether Defendants followed those policies and procedures. Defendants incorporate by reference the arguments presented in Motion in Limine V in regards to a failure to follow policies and procedures.

Additionally, Courts have held that "[n]othing in the language of PREA creates a private right to action." *Ocampo v. A Wahl*, No. 22-cv-1306, 2023 U.S. Dist. LEXIS 63206, at *16 (C.D. Ill. Apr. 11, 2023) (citing *Sims v. Doe*, No. 18-cv-2394, 2018 U.S. Dist. LEXIS 143394, 2018 WL 4027632, at *3 (S.D. Ind. Aug. 22, 2018)); see also *Bentley v. Baenen*, No. 17-cv-1791, 2018 U.S. Dist. LEXIS 31394, 2018 WL 1108701 (E.D. Wis. Feb. 27, 2018) ("PREA does not create a private cause of action in federal court.").

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request that this Court bar Plaintiff from eliciting any testimony from any non-expert witness regarding

whether the Defendants followed policies and procedures described in the PREA National Standards.

### VII. PLAINTIFF SHOULD BE PROHIBITED FROM OFFERING EVIDENCE OR TESTIMONY OF OTHER LAWSUITS INVOLVING DEFENDANTS.

Defendants requests the Court bar reference to or inquiries about other lawsuits involving Defendants. Even if relevant, the danger of unfair prejudice, misleading the jury, and confusing the issues far outweighs the probative value of such evidence. Such testimony would not be relevant under Rule 401 and constitutes inadmissible character evidence under Rule 404(b). See Fed. R. Evid. 401, 404; *Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 494-95 (7th Cir. 1990). Defendant works with a particularly litigious subset of the population. Allowing Plaintiff to suggest that because Defendants have been sued in the course of their employment, they mistreated Plaintiff in this instance is unfair and not authorized by the Federal Rules of Evidence.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request that this Court bar Plaintiff from eliciting any testimony regarding other lawsuits involving Defendants.

### VIII. PLAINTIFF SHOULD BE PROHIBITED FROM OFFERING EVIDENCE OR TESTIMONY OF ANY MISCONDUCT, REPRIMAND, OR GRIEVANCE ISSUED AGAINST DEFENDANTS.

Defendants requests the Court bar reference to any previous misconduct or inquiries regarding reprimands received by Defendants or grievances filed against Defendants to be irrelevant, and even if relevant, the danger of unfair prejudice, misleading the jury, and confusing the issues far outweighs the probative value of such evidence. Such testimony would not be relevant under Rule 401 and constitutes inadmissible character evidence under Rule 404(b). See Fed. R. Evid. 401, 404.

In *Duran v. Town of Cicero*, 653 F. 3d 632 (7th. Cir. 2011), plaintiffs brought a §1983 complaint against the town and multiple officers alleging the officers used excessive force, falsely arrested them, deprived them of equal protection, and asserted state-law claims. *Duran*, 653 F. 3d at 635. One of the defendants, Officer Vitalo, moved to prevent the introduction and reference to prior misconduct complaints. *Id.* at 645. The district court granted the motion *in limine*. *Id.* During Officer Vitalo's testimony at trial, his attorney asked a series of questions that arguably opened the door to the misconduct complaints. *Id.* Plaintiff's counsel asked the judge to reconsider the motion *in limine* in light of the line of questioning and testimony by Officer Vitalo. *Id.* The district court judge again declined to allow the evidence stating, "the danger of confusion and of unfair prejudice to the other defendants would outweigh the probative value as to the defendant Vitalo." *Id.* On appeal, the Seventh Circuit affirmed the exclusion of this evidence. *Id.* The Seventh Circuit noted that the district court has significant leeway when conducting an analysis under 404(b). *Id.* The Court further stated that, based upon the specific allegations of misconduct against Vitalo, "there was potential for prejudicial 'spillover' effect on all the defendants." *Id.* Finally, the Court stated that even though Vitalo arguably opened the door to the evidence, "the Rules of Evidence do not simply evaporate when one party opens the door on an issue." *Id.* (quoting *Manuel v. City of Chicago*, 335 F.3d 592, 596 (7th Cir. 2003)).

In this case, allowing Plaintiff to suggest that because Defendants received previous misconduct, reprimands, or had grievances filed against him shows that they violated Plaintiff's constitutional rights in this instance is prejudicial, irrelevant, and not authorized by the Federal Rules of Evidence.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request that this Court bar Plaintiff from eliciting any testimony regarding any misconduct, reprimand, or grievance issued against Defendants.

IX.     **THE COURT SHOULD BAR ANY EVIDENCE OF A RISK OF HARM TO PLAINTIFF ABSENT EVIDENCE THAT DEFENDANTS WERE AWARE OF THAT RISK.**

Defendants anticipate that Plaintiff may argue that Defendants are liable based on information that was available to them or they had access to. This is not the correct standard for a finding of deliberate indifference, which requires subjective knowledge by each Defendant as to a risk of harm to Plaintiff. Establishing that a Defendant "should have known" of a risk to a prisoner is insufficient for liability under Section 1983. *Pierson v. Hartley*, 39 F.3d 898, 902 (7th Cir. 2004), citing *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). Any information regarding a risk of harm to Plaintiff of which Defendants should have been aware, but were not, is irrelevant to the pending failure to protect claim. Additionally, Plaintiff cannot argue that Defendants' mere access to information constitutes knowledge without proof that they were actually "exposed to information concerning the risk." See *Corbier v. Watson*, No. 16-cv-257, 2017 U.S. Dist. LEXIS 114310, at *9 (S.D. Ill. Jul. 21, 2017) (citing *Sanville v. McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001); see also *Doe v. Crown Point Sch. Corp.*, No. 12-cv-264, 2015 U.S. Dist. LEXIS 112926, at *13-14 (N.D. Ind. Aug. 26, 2015) ("mere access to information, with no suggestion of willful ignorance . . . is simply not actual notice"). Plaintiff should therefore be barred from offering any evidence of a risk of harm to Plaintiff unless there is evidence that Defendants were subjectively aware of that information.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Court bar any evidence of a risk of harm to Plaintiff absent evidence that Defendants were actually aware of that risk.

**X.  THE COURT SHOULD BAR PLAINTIFF FROM USING UNSUBSTANTIATED ALLEGATIONS TO ESTABLISH KNOWLEDGE OF RISK.**

Defendants anticipate that Plaintiff will present prior investigations against Mr. Williams, which were found to be unsubstantiated, to establish that Defendants had knowledge that Mr. Williams posed an obvious risk of harm to Plaintiff. Courts have held that unsubstantiated allegations against prison staff do not provide knowledge of an obvious risk to an inmate's health or safety. According to PREA National Standards, "[u]nsubstantiated allegation means an allegation that was investigated and the investigation produced insufficient evidence to make a final determination as to whether or not the event occurred." 28 C.F.R. § 115.5. "[A] reasonable jury could not find that Defendants had actual knowledge of risk of sexual assault perpetrated by" a prison guard, "when [prior allegations against that guard] were found to be unsubstantiated." *Surrat v. Walker*, No. 08-1228, 2011 U.S. Dist. LEXIS 33523, at *8-9 (C.D. Ill. Mar. 29, 2011) (ruling that there was no reason for defendants to conclude that a prison guard was acting improperly with inmates because the allegations were unsubstantiated); see *J.H. v. Johnson*, 346 F.3d 788, 794 (7th Cir. 2003) (knowledge of two unfounded investigations does not equal knowledge or suspicion that the subject of the investigations was a probable sexual predator). Court have held that prison officials do not have a reason to take special precautions against an individual when prior investigations of that individual were found to be unsubstantiated. See *Melville v. Mitchell*, No. 13-755, 2015 U.S. Dist. LEXIS 37608, at *24-25 (E.D. Wisc. Mar. 25, 2015). All investigations of Mr. Williams prior to March 2019 were found to be unsubstantiated. As such, Plaintiff cannot rely on the prior investigations to establish that Defendants had knowledge that Mr. Williams posed an obvious risk of harm to Plaintiff.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this

Court to bar Plaintiff from presenting the prior unsubstantiated investigations to establish that that Defendants were aware of an obvious risk posed by Mr. Williams.

**XI.  THE COURT SHOULD BAR TESTIMONY THAT THERE WAS POLICY AT DECATUR CORRECTIONAL CENTER TO RETALIATE AGAINST INMATES THAT REPORTED SEXUAL MISCONDUCT.**

Defendants anticipate that Plaintiff testify or attempt to elicit testimony that Decatur Correctional Center had a policy to retaliate against inmates who reported sexual misconduct. Plaintiff's argument is based entirely on pure speculation. Plaintiff does not possess any actual evidence that such a policy was ever adopted and utilized at Decatur Correctional Center. Defendants adamantly deny the existence of such a policy. Courts have long held that speculation is no substitute for proof. "The idea that speculation can be employed as a substitute for proof" "has long [been] reject[ed]." *United States v. Landry*, 257 F.2d 425, 431 (7th Cir. 1958); *Accord In re Cohen*, 507 F.3d 610, 614 (7th Cir.2007) (speculation is not evidence); *Lauth v. McCollum*, 424 F.3d 631, 634 (7th Cir. 2005)(Posner, J.)("hypothesis is not proof").

Plaintiff further speculates that the goal of the policy was to discourage inmates from reporting incidents of sexual misconduct. Staff at Decatur Correctional Center utilized a number of proactive techniques in order to uncover allegations of misconduct, such as conducting exit interviews of inmates. Two investigations against Mr. Williams were started because of statements provided by inmates during an exit interview. The practice of using proactive investigative techniques is clear evidence that staff had a goal to discover evidence of misconduct at the facility. There is no proof that the inmates that provided the information to investigators were retaliated against. There is no proof that staff at Decatur Correctional Center had a goal to discourage inmates from reporting incidents of sexual misconduct.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Court to bar Plaintiff from presenting evidence that there was a policy at Decatur Correctional

Center to retaliate against inmates who reported sexual misconduct.

**XII. THE COURT SHOULD BAR EVIDENCE THAT SUGGESTS DEFENDANTS ARE LIABLE BECAUSE THEY WERE SUPERVISORS AT DECATUR CORRECTONAL CENTER.**

Defendants anticipate that Plaintiff will present evidence that is based on an implicit theory of supervisory liability, which has been found to be an insufficient basis to state a claim under Section 1983. The doctrine of *respondeat superior* does not apply to actions filed under 42 U.S.C. 1983. *Pacelli v. deVito*, 972 F.2d 871, 877 (7th Cir. 1992). To recover damages under a Section 1983 claim, a plaintiff must establish that the defendant was personally responsible for the deprivation of the constitutional right. *Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012). Failure to take corrective action cannot, in and of itself violate § 1983, otherwise the actions of a subordinate could be attributed to the government. *Soderbeck v. Burnett County, Wisc.*, 752 F.2d 285, 293 (7th Cir. 1985). Additionally, the Seventh Circuit has held:

> "For the purposes of a motion to dismiss, a warden [or a Director] cannot be assumed to be directly involved in the prison's day-to-day operations. *See Duncan v. Duckworth*, 644 F.2d 653, 656 (7th Cir.1981). This principle does not impose a substantive limitation on a warden's [or a Director's] liability beyond the established one against vicarious liability. Nor does it raise the bar for the pleadings of a class of civil rights plaintiffs. It is simply the uniform application of a rule of construction: an inference that a warden is directly involved in a prison's daily operations is not reasonable. [...] The prison might be very small, the title "warden" might be used in an unusual way, or a warden might have temporarily taken on direct management of some aspects of the prison due to special circumstances. Nothing of that sort is alleged here."

*Steidl v. Gramley*, 151 F.3d 739, 741-42 (7th Cir. 1998) (emphasis added). "Section 1983 does not authorize respondent superior or supervisory liability." *Moore v. Ill. Dep't of Corr.*, No. 19-cv-1206, 2020 U.S. Dist. LEXIS 6647, at *5 (S.D. Ill. Jan. 15, 2020) (internal citations omitted). Section 1983 creates liability "only for a defendant's personal acts or decisions" and "does not authorize 'supervisory liability.'" *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

Simply being aware of a violation taking place under one's supervision is also not enough to establish liability. *Thomas v. Kelly*, No. 20-cv-0734, 2021 U.S. Dist. LEXIS 107611, at *8 (N.D. Ill. Jun. 9, 2021) (citing *Crowder v. Lash*, 687 F.2d 996, 1006 (7th Cir. 1982)); see *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) ("supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable"). Defendants can only be held liable for their own personal actions and his own knowledge, and cannot be liable for the knowledge or actions of those individuals whom they supervise. *Vinning-El*, 657 F.3d at 592; *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009).

Additionally, "Public officials do not have a free-floating obligation to put things to rights . . Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job." *Burks*, 555 F.3d at 595; see also *Hunter v. Mueske*, 73 F.4th 561, 567 (7th Cir. 2023) (a defendant is entitled to rely on the professional judgment and competence of the officials charged with handling those tasks). Defendants' job duties do not include conducting investigations, and Plaintiff is not constitutionally entitled to demand that they perform duties delegated to other officials. Burks v, 555 F.3d at 595 ("[N]o prisoner is entitled to insist that one employee do another's job.").

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Court to bar Plaintiff from presenting arguments that Defendant are liable simply because they were supervisors at Decatur Correctional Center.

### XIII. THE COURT SHOULD BAR EVIDENCE OF THIRD-PARTY HEARSAY STATEMENTS CONTAINED WITHIN INVESTIGATION REPORTS.

Defendants anticipate that Plaintiff will present hearsay statements made by third-party inmates, which are contained in the investigation reports created by investigators during their investigations of Mr. Williams. Several of the statements made by third-party inmates are

themselves based on double and/or triple hearsay. The statements made by the third-party inmates could justifiably be characterized as nothing more than rumor and speculation. Rumors and speculation are inadmissible at trial. Under Federal Rule of Evidence 803(6), records kept in the course of regularly conducted business activity are admissible. Fed. R. Evid. 803(6). However, the Seventh Circuit has repeatedly held, "statements made by third parties in an otherwise admissible business record cannot properly be admitted for their truth unless they can be shown independently to fall within a recognized hearsay exception." *United States v. Christ*, 513 F.3d 762, 769 (7th Cir. 2008) (citing *Woods v. City of Chicago*, 234 F.3d 979, 986) (7th Cir. 2000). This is because "courts may not permit the introduction of hearsay contained within hearsay unless each layer is properly admitted under an exception" to hearsay. *United States v. Borrasi*, 639 F.3d 774, 780 (7th Cir. 2011). Plaintiff has not offered any hearsay exception encompassing the statements made by third-party inmates. Therefore, the statements contained in the investigation reports are not admissible under Rule 803(6). This motion does not preclude Plaintiff from calling any of the third-party inmates to testify about what they personally observed.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Court to bar Plaintiff from presenting hearsay statements made by third-party inmates contained within investigation records.

## XIV. THE COURT SHOULD BAR EVIDENCE REGARDING ANY INCIDENTS THAT OCCURRED OR WERE DISCOVERED AFTER THE FIRST TWO WEEKS OF MARCH 2019.

Defendants anticipate that Plaintiff will present evidence of incidents that occurred or were discovered after she was allegedly sexually assaulted by Mr. Williams. Plaintiff alleges that she was sexually assaulted "[d]uring the first two weeks of March of 2019." [Doc. 1, page 4]. Plaintiff's intent to use these later incidents is shown by references to those incidents in

Plaintiff's expert witness's report. [Exhibit 1, Expert Witness Report, page 14]. The expert report includes references to Investigation 19-DCT-120, which involves an allegation made by Inmate Evette Robinson on April 3, 2019, and Investigation 19-DCT-5013, which involves an allegation made by an unidentified inmate on April 19, 2019. [Exhibit 1, page 14]. The expert report also includes references to Investigation 18-DCT-330, which includes statements made by third-party inmates in April and May of 2019 about previously unknown allegations of sexual abuse committed by Mr. Williams. At issue at trial is whether Defendants had knowledge that Mr. Williams posed a risk of harm to Plaintiff during the first two weeks of March of 2019. As such, incidents that occurred or were discovered later cannot be used to establish knowledge of the Defendants during the relevant time period. See *Durkee v. Minor*, 841 F.3d 872, 877 (10th Cir. 2016) ("basic principals [sic] of linear time prevent us from seeing how conduct that occurs after the alleged violation could have somehow caused that violation"). References to incidents that occurred or were discovered later will lead to jury confusion and potentially allow them to mistakenly believe that these later incidents could be used to establish Defendants' knowledge of risk during the relevant time period.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Court to bar Plaintiff from presenting evidence regarding any incidents that occurred or were discovered after the first two weeks of March 2019.

### XV. THE COURT SHOULD BAR EVIDENCE REGARDING A GENERAL DANGER OF SEXUAL ABUSE AT DECATUR CORRECTIONAL CENTER.

Plaintiff should be barred from presenting evidence of a general risk of danger of sexual abuse at Decatur Correctional Center. A failure to protect claim cannot be predicated merely on knowledge of general risks of violence in a detention facility. *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). The Seventh Circuit has held that a generalized, vague, or stale concern about

one's safety will not support an inference that a prison official had actual knowledge that the prisoner was in danger. *Gevas v. McLaughlin*, 798 F.3d 475, 480-481 (7th Cir. 2015). A generalized risk will not typically be "substantial" because it is not "almost certain to materialize if nothing is done." *Brown*, 398 F.3d at 911. "In cases where an inmate's claims for failure to protect against the risk of sexual assault survived summary judgment, the record contained evidence of correctional officers' knowledge of a specific and substantial threat. *Cole v. Tredway*, No. 14-1059, 2016 U.S. Dist. LEXIS 169178, at *14 (S.D. Ill. Dec. 7, 2016).

Allegations of sexual misconduct and/or sexual abuse against non-party Decatur employees would establish that Plaintiff faced the risk a "non-specific, indefinite, or non-particularized danger" from non-party Decatur employees, which could not be used to establish a failure to protect claim against Defendants. *Martin v. E. St. Louis Sch. Dist. #189*, No. 14-CV-1393, 2016 U.S. Dist. LEXIS 57334, at *14 (S.D. Ill. Apr. 29, 2016). Vague and general knowledge of the existence of prison sexual assault is not sufficient for liability under the Eighth Amendment. *Minor B v. Duff*, 06-C-4912, 2009 U.S. Dist. LEXIS 61109, at *54 (N.D. Ill. Jul. 17, 2009). In *Minor B. v. Duff*, the court held:

> "[t]he mere fact that sex between inmates and staff is a recognized problem among professionals, in general, at penal institutions, coupled with [the Warden's] knowledge of unsubstantiated rumors . . . is insufficient to permit a trier of fact to infer knowledge of a substantial risk because it consists of vague information, and does not demonstrate an ongoing pattern, or real, actual risk of sexual assault by the staff members."

*Id.*; see *Ramos v. Hamblin*, 840 F.3d 442, 445 (7th Cir. 2016) (affirming dismissal of a case where prison officials did not know that there was a nontrivial danger of plaintiff being raped). Courts have held that a plaintiff cannot establish deliberate indifference where the official only has knowledge of a "non-specific, indefinite, or non-particularized danger." *Martin*, 2016 U.S. Dist. LEXIS 57334, at *14. Courts have also held that being female, in and of itself, is not a particular vulnerability to the substantial risk of rape. *Id.* (explaining that the female victim also needed to

show that she had a history of being sexually assaulted or was being threatened with sexual assault). Courts have warned that if a general risk of violence was permitted to establish a knowledge of a substantial risk of harm then "prison officials would, in effect, become strictly liable for all violence in the institution." *Vesey v. Owens*, 13-CV-7367, 2015 U.S. Dist. LEXIS 76192, at *24 (N.D. Ill. Jun. 12, 2015).

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Court to bar evidence regarding a general danger of sexual abuse at Decatur Correctional Center.

## XVI.  THE COURT SHOULD PRECLUDE PLAINTIFF FROM SUGGESTING ANY AMOUNT OF NON-ECONOMIC DAMAGES TO THE JURY.

Defendants anticipate that Plaintiff will ask the jury to award her a specific amount for the non-economic damages that she suffered. Defendants have no knowledge as to the specific amount that Plaintiff will ask the jury to award her. Defendants expect to learn that specific amount for the first time at trial. "Case law across the federal courts reflects that plaintiffs who choose not to provide damages computations cannot in turn offer such computations to a jury." *Smith v. Chicago*, No. 15-cv-3467, 2020 U.S. Dist. LEXIS 268439, at *23-24 (N.D. Ill. Nov. 4, 2020). Rule 26(a)(1)(A)(iii) obligates plaintiffs to provide:

> "A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Plaintiff's initial disclosures stated the following:

> "As for computation of her damages, Plaintiff suffered severe emotional distress and suffering, pain, discomfort, humiliation, fear and anxiety, insecurity, helplessness, and felt mortified horrified and violated, and continues to experience trauma from this violation. All of this damage has occurred of a nature and in an amount that cannot be quantified, but will be determined by a jury."

[Exhibit 2, Plaintiff's Initial Rule 26 Disclosures] (emphasis added). Pursuant Fed. R. Civ. P. 26(a)(1)(A)(iii), Defendants are entitled to a disclosure that provides a computation containing a specific amount of damages for each category claimed. Rule 26 does not exclude any type of damages from computation.

In *Olsen v. Owners Ins. Co.*, the district court concluded that Rule 26 did not obligate the plaintiff to provide a calculation for non-economic damages because they are "not typically suitable to a precise calculation." *Olsen v. Owners Ins. Co.*, No. 18-cv-1665, 2019 U.S. Dist. LEXIS 101048, at *28 (D. Colo. June 17, 2019). However, the district court explained, "[b]y the same token, [plaintiff] appears to be forfeiting his opportunity to request a specific amount of non-economic and impairment damages from the jury." *Id.* at *30 (citation omitted). "Indeed, to hold otherwise is fraught with the potential for surprise." *Smith*, 2020 U.S. Dist. LEXIS 268439, at *24. In *Sandoval v. American Building Maintenance*, the district court noted:

> "[I]f plaintiffs do intend to suggest a specific amount to the jury for emotional distress damages, plaintiffs shall be required to provide to defendants the basis for this figure. After all, if plaintiffs present a specific amount to the jury for compensatory damages, then presumably they have a basis and a means for arriving at the amount they are seeking. In short, in that situation, the calculation for emotional distress damages is not necessarily vague, and it would be unfair to defendants if plaintiffs could submit a specific dollar amount for damages to the jury without defendants having the opportunity to discover the basis for the claim and the opportunity before trial to rebut that basis. Further, this Court will not allow plaintiffs to wait until the eve of trial to provide defendants with this information."

*Sandoval v. American Building Maintenance Industries, Inc.*, 267 F.R.D. 257, 282-83 (D. Minn. 2007); See also *De Varona v. Disc. Auto Parts, LLC*, No. 12-20714, 2012 U.S. Dist. LEXIS 191048, at *5-6 (S.D. Fla. June 19, 2012) ("[I]f Plaintiff decides not to disclose a computation for noneconomic damages at the initial disclosure phase, then Plaintiff is precluded from suggesting any amount of non-economic damages to the jury at any point or manner during the trial.").

Compensatory damages "must be based on evidence and not speculation or guesswork." 7th Cir. Pattern Instruction 3.10. By refusing to disclose a computation of her non-economic damages, Plaintiff has denied Defendants the ability to investigate whether the specific amount requested at trial is based on evidence or is the result of speculation and guesswork.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Court preclude Plaintiff from suggesting any amount of non-economic damages to the jury

### XVII.   THE COURT SHOULD BAR PLAINTIFF FROM RELYING ON AN IMPROPER BASIS TO ESTABLISH DELIBERATE INDIFFERNCE.

Defendants anticipate that Plaintiff will use an improper basis to establish deliberate indifference. Prison officials violate the Eighth Amendment when they act with deliberate indifference to "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 843; see *Sinn v. Lemmon*, 911 F.3d 412, 422 (7th Cir. 2018) ("Failure-to-protect claims are predicated on a prison official's subjective knowledge.").

A deliberate-indifference claim under the Eighth Amendment requires the following three elements: "(1) there must be a risk of harm to the plaintiff that is so objectively serious as to be 'excessive' (and that risk must in fact materialize); (2) the defendant must 'know' of the risk (put differently, he must possess subjective awareness that the risk exists); (3) the defendant's response to the risk must be so inadequate as to constitute 'disregard' of (or deliberate indifference toward) the risk." *Hunter*, 73 F.4th at 565 (citing *Gevas*, 798 F.3d at 480). "Deliberate indifference is more than mere negligence or carelessness: it is 'something

approaching a total unconcern' for inmate safety." *Id.* (citing *Rosario v. Brawn*, 670 F.3d 816, 821

(7th Cir. 2012).

Plaintiff's Complaint alleges that Defendants were deliberately indifferent in the

following ways:

a) Knowing about and/or turned a blind eye to the abusive and/or problematic behavior towards incarcerated women at DCC of Defendant Williams;

b) Knowing about and/or turning a blind eye to Defendant Williams' access and ability to seclude incarcerated women at DCC in areas where his abusive conduct could not be observed or detected;

c) Failing to properly train Defendant Williams to prohibit him from sexually assaulting and abusing incarcerated women at DCC;

d) Failing to properly supervise Defendant Williams to prohibit him from sexually assaulting and abusing incarcerated women at DCC;

e) Failing to properly investigate and discipline Defendant Williams to prohibit him from sexual assaulting and abusing incarcerated women at DCC;

f) Failing to create and/or implement policies to encourage incarcerated women to come forward with allegations of employee sexual misconduct in order that employee misconduct be stopped;

g) Failing to create and /or implement policies to properly train, supervise, discipline, monitor and otherwise control corrections employees;

h) Failing to appropriately and timely identify problems with employee sexual harassment and abuse of incarcerated women;

i) Failing and refusing to provide adequate care and protection of incarcerated women vulnerable to sexual harassment and abuse;

j) Failing to take adequate preventative measures upon discovery of sexual harassment and abuse of prisoners; and/or

k) Possessing knowledge of sexual harassment and abuse of incarcerated women and approving and/or deliberately turning a blind eye to such harassment and abuse.

[Doc. 1, page 8].

Subparts (a) - (k) are problematic because they do not involve knowledge of an excessive risk to Plaintiff's health or safety. Subparts (a) - (k) could best be described as Plaintiff's criticisms in the way that prison officials conduct day-to-day operations at Decatur Correctional Center. Subparts (a) – (k) assume that Defendants are all directly involved in the prison's day-to-day operations. Courts have held that "a warden cannot be assumed to be directly involved in the prison's day-to-day operations." *Steidl*, 151 F.3d at 741.

Subparts (a), (b), (e), (h), (i) and (k) are also problematic because the Constitution does not require officials to investigate or otherwise correct wrongdoing after it has happened. *Whitlock v. Brueggemann*, 682 F.3d 567, 588-89 (7th Cir. 2012); *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002); *Amaya v. Mitchell*, No. 21-1707, 2023 U.S. Dist. LEXIS 1358, at *7 (S.D. Ill. Jan. 4, 2023).

Subparts (c), (d), (f), (g), and (j) are claims typically associated with *Monell*. *Monell* permits suits against municipalities or private corporations acting in the place of the state if their policy, practice, or custom caused a constitutional violation. But individuals cannot sue state agencies like the IDOC under *Monell* due to the Eleventh Amendment to the United States Constitution and the doctrine of sovereign immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989).

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Court bar Plaintiff from relying on an improper basis to establish deliberate indifference.

### XVIII.  THE COURT SHOULD BAR PLAINTIFF FROM PRESENTING EVIDENCE OR WITNESSES THAT WERE NOT DISLCOSED TO DEFENDANTS DURING THE COURSE OF DISCOVERY.

Defendants anticipate that Plaintiff may attempt to introduce evidence or witnesses at trial that were not disclosed to Defendants during the course of discovery. Plaintiff was required, under Rule 26 of the Federal Rules of Civil Procedure, to provide Defendants with a

copy "of all documents . . . that [he] has in [his] possession, custody, or control and may use to support [his] claim." Fed. R. Civ. P. 26(a)(1)(A)(ii). Plaintiff was also required, under Rule 26, to disclose the names of witnesses that she may use to support her claims. Fed. R. Civ. P. 26(a)(1)(A)(i). To allow Plaintiff to rely upon or to present evidence and/or witnesses not previously disclosed, would violate the requirements of Rule 26, and would place the Defendants at a disadvantage, and lead to extensive prejudice based upon Plaintiff's failure to disclose.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Court bar Plaintiff from presenting evidence or witnesses that were not disclosed to Defendants during the course of discovery.

XIX.    **THE COURT SHOULD BAR PLAINTIFF FROM MAKING ANY REFERENCE TO PUNISHING OR SENDING A MESSAGE TO THE STATE OF ILLINOIS OR ILLINOIS DEPARTMENT OF CORRECTIONS.**

Plaintiff should be barred from making any argument that the jury should "send a message" to the State of Illinois or Illinois Department of Corrections with its verdict, or that the jury should somehow punish the State of Illinois or Illinois Department of Corrections with its verdict. Sending a message, or punishment, cannot form the basis for any damages other than punitive damages. Defendants were sued in their individual capacities. Thus, Plaintiff cannot recover punitive damages from the State of Illinois or Illinois Department of Corrections. Accordingly, Plaintiff should not be allowed to imply to the jury that punishment can serve as a legitimate basis for an award against the State of Illinois or Illinois Department of Corrections. Any such implication would be unfairly prejudicial to Defendants. See Fed. R. Evid. 403.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Court to bar Plaintiff from making any reference to punishing or sending a message to the State of Illinois or Illinois Department of Corrections.

## XX. THE COURT SHOULD BAR ANY ATTEMPTS TO EVOKE SYMPATHY FROM THE JURY.

Defendants anticipate that Plaintiff may attempt to appeal to the jury for sympathy. Defendants seek to bar any attempt to appeal to the jury for sympathy. Verdicts should not be influenced by sympathy or prejudice. 7th Cir. Pattern Instruction 1.01. See *Rodriguez v. Peters*, 63 F. 3d 546, 564 (7th Cir. 2012).

Additionally, the Court should bar excessive displays of emotion in front of the jury by Plaintiff's counsel, which could be used to appeal to the jury for sympathy. Defendants are aware that Plaintiff's counsel in *Doe v. MacLeod*[1], CDIL No. 18-cv-3191, repeatedly made excessive displays of emotion in front of the jury, which included attorneys crying during opening/closing statements, attorneys running out of the courtroom crying while evidence was being presented to the jury, attorneys crying at Plaintiff counsel's table during direct examination of witnesses, mutual comforting of Plaintiff and attorneys at Plaintiff counsel's table. The Court should require all attorneys comport themselves in a professional manner throughout the proceedings and not engage in any attempts to garner sympathy from the jury.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Court to bar any attempts to evoke sympathy from the jury.

## XXI. PLAINTIFF SHOULD BE PROHIBITED FROM OFFERING EVIDENCE OR TESTIMONY REFERENCING ANY "GOLDEN RULE" APPEAL.

Defendants request the Court bar any "Golden Rule" appeal including any argument or testimony that the jury place itself in Plaintiff's position or the damages be based on a scenario whereby jurors hypothetically sustain injuries or damages similar to that purportedly sustained by Plaintiff. *Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir. 1982). "A

---

[1] Doe v. MacLeod also involved an allegation that prison officials failed to protect an inmate from sexual misconduct.

'Golden Rule' appeal in which the jury is asked to put itself in the plaintiff's position is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *United States v. Teslim*, 869 F.2d 316, 328 (7th Cir. 1989) (internal quotations omitted); see also *Tomao v. Abbott Labs.*, Inc., 2007 WL 141909 (N.D. Ill. Jan. 16, 2007) (Granting the defendant's motion *in limine* regarding "golden rule" appeal).

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Court bar Plaintiff from eliciting any testimony referencing any "Golden Rule" appeal.

## XXII. THE COURT SHOULD BAR PLAINTIFF'S EXPERT WITNESS, DAWN DAVIDSON

The admissibility at trial of expert testimony is governed by Fed. R. Evid. 702 and the Supreme Court's seminal decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). See also *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011); *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Rule 702 is rooted in Rule 402, in that all relevant evidence is generally admissible. *Daubert*, 509 U.S. at 587. Relevant evidence is that which has any tendency to make a fact, consequential in determining the outcome, more or less probable than it would be without the evidence. Fed. R. Evid. 401.

As gatekeeper of evidence admissibility, a district court must "ensure that any and all…testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 590; *Bielskis*, 663 F.3d at 893. "The proponent of the expert bears the burden" of demonstrating that the testimony satisfies the *Daubert* standard." *Lewis*, 561 F.3d at 705; Fed. R. Evid. 702 advisory committee notes (2000 Am.). The ultimate objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom

the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The first, and most glaring, issue with Ms. Davison's opinion is that it. relies on speculation. In one instance Ms. Davison created a fictional scenario where Plaintiff told an investigator about "the assault or the abuse" perpetrated by Mr. Williams and that the investigator said "you need to talk to somebody about that." [Exhibit 3, Deposition transcript of Ms. Davison, 35: 20 – 36: 8, 36: 16 – 37: 10]. The note in question does not indicate that Plaintiff reported any abuse to the investigator or told her that she needs to talk to somebody about that. [Exhibit 4, IDOC Bates 815]. The note does not indicate that Plaintiff made any statement to the investigator. [Exhibit 4]. Ms. Davison was not present for this encounter and as such, her claimed expertise does not permit her to speculate about what Plaintiff may or may not have told the investigator. Ms. Davison's opinion is littered with speculation about the effect that policies at Decatur Correctional Center had on the inmates assigned there. [Exhibit 1, pages 6, 15, 18, 20]. Ms. Davison also speculates that Defendant Hansbro's actions caused Mr. Williams to "feel invincible and emboldened to continue his abuse of incarcerated women." [Exhibit 1, page 12]. Ms. Davison also speculates that Mr. Williams "knew exactly where to go to sexually abuse the incarcerated women." [Exhibit 1, page 18]. Speculation is not the function of an expert. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. 2010). Expert testimony is inadmissible when based on speculation and argument unsupported by evidence. *Goodwin v. MTD Prods.*, 232 F.3d 600, 608 (7th Cir. 2000). As an expert, Ms. Davison "cannot create his own factual record to support [her] opinions." *Est. of Pero v. Cnty. Of Ashland*, No. 20-cv-984, 2022 U.S. Dist. LEXIS 4194, at *35 (W.D. Wisc. Jan. 10, 2022).

Ms. Davison's expert report makes factual findings that have no evidentiary basis. For example, the expert report states:

> "[i]t became a practice at DCC that woman who made a sexual abuse complaint was routinely put in to segregation. This practice produced a chilling effect on women house at DCC. They know that if they come forward with a sexual abuse complaint, staff will almost always place them into segregation without assessing or documenting the possibility of alternative housing."

Defendants adamantly deny that such a policy exists. When questioned about the basis for her statement, Ms. Davison stated that she relied statements made by third-party inmates in investigation reports. [Exhibit 2, 30: 5-10]. As noted above in **Motion in Limine XIII**, statements made by third-party inmates constitute hearsay and cannot be relied for the truth of the matter asserted. *United States v. Noel*, 581 F.3d 490, 497 (7th Cir. 2009) ("an expert's opinion that lacks proper substantiation is 'worthless'") Ms. Davison failed to explain how these statements inmates constitutes definitive proof that a policy existed. In essence, Ms. Davison is using her role as an expert witness to make findings of fact. "Seventh Circuit precedent . . . prohibits expert witnesses from offering opinions or legal conclusions on issues that will determine the outcome of a case." *Klaczak v. Consol. Med. Transp. Inc.*, No. 96 C 6502, 2005 U.S. Dist. LEXIS 13607, at *11 (N.D. Ill. May 26, 2005). If the Court were to allow Ms. Davison, as an expert, "make and relay credibility findings to the jury regarding the witnesses' testimony. Such testimony is improper . . . ." *McCloughan v. City of Springfield*, 208 F.R.D. 236, 239 (C.D. Ill. May 24, 2002). "While [an expert] is free to explain the conclusions he draws from the . . . evidence, he may not opine **as** to whether or not he believes that [a witnesses] prior statements and/or testimony is credible. Such testimony would exceed [the expert's] expertise and would invade the province of the jury." *White v. Gerardot*, No. 05-cv-382, 2008 U.S. Dist. LEXIS 72436, at *17 (N.D. Ind. Sept. 23, 2008).

To be admissible, an expert's testimony must, by way of a reliable, recognizably professional or technical methodology, assist the jury in making factual determinations that permit them to resolve issues in dispute. Accordingly, "[an] expert['s] work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff--deploying neither data nor analysis--is not an acceptable methodology." *Lang v. Kohl's Food Stores*, *Inc.*, 217 F.3d 919, 924 (7th Cir. 2000). The expert must explain his or her methodology and cannot "simply assert a bottom line." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010). An expert "who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term." *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005); see also *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003) ("The court is not obligated to admit testimony just because it is given by an expert."). Indeed, the Seventh Circuit has consistently held that "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." Zenith Elecs. Corp., 395 F.3d at 419-20.

Ms. Davison's opinion is not based on reliable, recognizably professional or technical methodology. For example, Ms. Davison expert report states:

> "Moskus failed to take any pro-active action to mitigate the toxic environment in the Dietary Department. Numerous sources of information were available to her, form files, discussion with the previous warden, walking and talking with the women employed in the Dietary Department, and current in-coming PREA complaints were not considered in determining actions needed to improve the Dietary environment."

[Exhibit 1, page 15]. When asked to provide source of her opinion, Ms. Davison stated that it was based on "her expertise," "common sense," and "good leadership." [Exhibit 2, 86: 24 – 87: 24]. Ms. Davison denied that her opinion was based on any policy, regulation, or standard provided in the PREA National Standards. [Exhibit 2, 87: 25 – 88: 6]. It is clear that Ms. Davison is providing off the cuff opinions that are not based in any acceptable methodology. As such,

the Court must find that her opinion supplies nothing of value to the judicial process.

Ms. Davison's report is entirely comprised of findings of fact that are in dispute. [Exhibit 1, pages 9, 10-15, 18-20]. Expert testimony cannot be offered for the purpose of bolstering contested facts or suggesting credibility of one particular account over another. *See, e.g., U.S. v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991); *Nunez v. BNSF Ry. Co.*, 730 F.3d 681, 684 (7th Cir. 2013) ("Vouching for a lay witness is not expert testimony."); *Hunt v. Dart*, 754 F. Supp. 2d 962, 971 (N.D. Ill. 2010). Likewise, failing to consider other potential accounts is not intellectually rigorous (the ultimate goal of Rule 702) and renders an expert's opinions to be mere speculation. See *Kumho Tire*, 526 U.S. at 152; *Lewis*, 561 F.3d at 706. This Court has similarly found such expert testimony to be improper. See *Giuffre v. Jefferson*, 14 C 3692, 2017 WL 951239, at *2 (N.D. Ill. Mar. 10, 2017) ("allowing [plaintiff's expert] to offer an opinion relying in primary part upon the assumption that Defendants' account is accurate would cause significant confusion regarding this issue and impermissibly usurp the jury's role.").

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request that this Court bar Plaintiff's expert witness, Dawn Davison.

## CONCLUSION

WHEREFORE, for the above and foregoing reasons, Defendants move for an entry of orders *in limine* I through XXII, and any other relief this Honorable Court deems just and proper.

Dated: January 26, 2024

Respectfully submitted,

Kwame Raoul
Attorney General
*State of Illinois*
*Counsel for Defendants,*
JAMES BROWN, SHELITH
HANSBRO, ANGELA LOCKE,
and JANE MOSKUS

By: _s/ Alan Remy Taborga_
Alan Remy Taborga
Assistant Attorney General
Office of the Illinois Attorney General
1776 East Washington Street
Urbana, Illinois 61802
Phone: (217) 278-3332
E-Mail: alan.taborga@ilag.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2024, I electronically filed the foregoing, *Defendants'*

*Motion in Limine*, with the Clerk of Court using the CM/ECF system, which will send notification

to the following participants:

| | |
|---|---|
| Janine Hoft | janinehoft@peopleslawoffice.com |
| Hakeem Muhammad I | akeemmuhammad498@gmail.com |
| Janis M. Susler | jsusler@gmail.com |
| Monroe D. McWard | mdmcward@mcwardlaw.com |

Respectfully submitted,

By: *s/ Alan Remy Taborga*

Alan Remy Taborga
Assistant Attorney General
Office of the Illinois Attorney General
1776 East Washington Street
Urbana, Illinois 61802
Phone: (217) 278-3332
E-Mail: alan.taborga@ilag.gov